| UNITED STATES BANKRUPTCY COURT | Return Date: March 9, 2010 |
| SOUTHERN DISTRICT OF NEW YORK | 10:00 A.M. |

-------------------------------------------------------x

| In re: | Chapter 11 |
| NEVIOT REALTY HOLDINGS, LLC | Case No. 10-10705 (SMB) |
| Debtor. | |

-------------------------------------------------------x

## DEBTOR'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF NEW YORK COMMUNITY BANK TO CHANGE OF VENUE OF CHAPTER 11 CASE TO THE MIDDLE DISTRICT OF FLORIDA

This Memorandum of Law is respectfully submitted on behalf of Neviot Realty Holdings, LLC's (the "Debtor") in opposition to the motion (the "Motion") of New York Community Bank ("NYCB") to change venue of the Chapter 11 case to the Middle District of Florida. For reasons set forth below, the Motion should be denied.

### PRELIMINARY STATEMENT

NYCB's request to change of venue of the Chapter 11 case is certainly fair game for litigation, but the location of the Debtor's principal place of business has been transient over the last several months and has changed in light of the ascendancy of the mezzanine lender to control of the Debtor. Accordingly, despite the obvious connections to Florida as the situs of the property, the question of venue is fluid and practical realties ought to be considered.

Chiefly, a transfer of venue will force the Debtor to attempt to reorganize one thousand miles or more from its current business decision-making apparatus. More fundamentally, however, it will also potentially delay disposition of the Debtor's pending

motion seeking a turnover of the property to the detriment of legitimate interests, including NYCB. Thus, it is respectfully submitted that a venue determination be at least postponed until the hearing on the Debtor's turnover motion scheduled for March 16, 2010. Interestingly, continuation of the Chapter 11 case in New York permanently or temporarily will not prejudice NYCB since it is a well established New York bank, with its executive offices here.

## STATEMENT OF FACTS

The supporting facts relevant to the Debtor's opposition to the Motion are more fully set forth in the accompanying Affidavit in Opposition of David Galanter and will not be repeated here to avoid unnecessary duplication. Instead, those facts will be referenced in the Debtor's legal argument below as applicable and appropriate.

## ARGUMENT

## NYCB'S MOTION TO CHANGE VENUE SHOULD BE DENIED

A. **The Southern District of New York Currently Constitutes the Debtor's Principal Place of Business Under the Major Business Decision Test.**

Venue of a bankruptcy proceeding is governed by 28 U.S.C. § 1408, which provides multiple locations for a Title 11 case based on either the Debtor's domicile, principal place of business or location of principal assets. Each of these predicates forms an independent basis for venue. See, e.g., In re Washington, Perito & Dubuc, 154 B.R. 853, 859 (Bankr S.D.N.Y. 1993) [Venue may properly lie in more than one district].

2

Procedurally, NYCB, as the moving party, bears the burden of proof by a preponderance of the evidence to effectuate a change of venue. In re Manville Forest Prod. Corp., 896 F.2d 1384, 1390-91 (2d Cir. 1990). ["The party moving for a change of venue bears the burden of proof and that burden must be carried by a preponderance of the evidence"].

Not unexpectedly, NYCB argues that venue is proper in Florida because this is where the Debtor's real property is located and was the location of the original business offices. In bankruptcy, however, a corporate entity's principal place of business is determined by the so-called major business decisions test, which looks to where the Debtor controls its financial affairs, rather than the place of its day-to-day activities or physical location of assets. The Second Circuit has been a long standing proponent of the major business decision test dating back to 1953. In Capitol Motor v. Counts Le Blanc Corp., 201 F.2d 356 (2d Cir 1953), the venue of a Chapter X reorganization case for Maryland and Louisiana based entities which conducted business outside of New York was nevertheless sustained in New York upon the rationale that the "troubles of the business were not manufacturing but financial, and the heart and also body of that was in New York." *Id.* at 359.

Bankruptcy courts have consistently applied the major business decision test in a number of other reported cases involving a request to change venue. See, e.g., In Garden Manor Associates, 99 B.R. 551, 553 (Bankr. S.D.N.Y. 1988) ["The principal place does not necessarily have to be the place where the sole asset is located, but is often where major business decisions are made"]; In re Suzanne de Lyon Inc., 125 B.R. 863,

3

867 (Bankr. S.D.N.Y. 1991) ["It is necessary . . . to consider the character of the corporation, its purposes and its activities. Central to this determination is where the debtor makes its major business decisions, for this constitutes the principal place of business of a debtor, notwithstanding the physical location of its assets or production"]. Accord: In re Eagle Point Limited Dividend Housing, 350 B.R. 84 (Bankr. N.D. Indiana) [". . . focus on the location of the entity's primary decisionmakers is particularly appropriate . . ."]; In LaGuardia Associates LP, 316 B.R. 832 (Bankr. E.D. Pa 204) [Adopting nerve center test over operational test]; In re Holiday Towers, 18 B.R. 183 (Bankr. S.D. Ohio 1982) [Nerve center test applied over "bulk of activity" test].

As emphasized in the accompanying Affidavit in Opposition, all important financial and strategic decisions will be made in New York where the Debtor's equity holder Wadsworth Equities Holdings LLC ("Wadsworth") is located. Thus, application of the major business decision test supports retention of venue in the Southern District of New York.

Even if New York is the current situs of the Debtor's decision making, the standard under 28 U.S. §1408 encompasses a review of the 180 days prior to the Chapter 11 filing. Wadsworth does not know precisely where, how or if Mr. Boaziz conducted the Debtor's business during this period, but the Debtor certainly engaged in activities in New York, including commencement of action which ultimately resulted in a judgment against Wadsworth on the mezzanine loan. We submit that under the relatively unique circumstances presented here, the nerve center during the prior 180 days arguably remains an open question.

4

B.  **The Corco Factors Do Not Warrant a Change of Venue**

Even if the Debtor meets the standards of 28 U.S.C. §1408, the NYCB has alternatively moved for transfer under 28 U.S.C. § 1412 "in the interest of justice or for the convenience of the parties."

Preliminarily, the Court should exercise its power to transfer a proper venued case cautiously. In re Enron Corp., 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) ("Enron I"); In re Enron Corp., 284 B.R. 376, 386 (Bankr. S.D.N.Y. 2002; abrogated on other grounds 317 B.R. 629 (Bankr. S.D.N.Y. 2002) ("Enron II"). The Debtor's choice is entitled to great weight. In re Melgar Enterprises, Inc., 140 B.R. 43, 45 (Bankr. E.D.N.Y. 1992), In re Pavillion Place Associates, 88 B.R. 32, 35 (Bankr. S.D.N.Y. 1988) ["Transfer is a cumbersome disruption of Chapter 11 process"].

The criteria to be considered by the court in reviewing a motion to change venue was established by the Fifth Circuit in the seminal case, In re Commonwealth Oil Refining Co., 596 F.2d 1239, 1247 (5th Cir. 1979); cert. denied, 444 U.S. 1045, 100 S.Ct. 732 (1980). These factors are commonly known by the acronym "Corco" and include (i) proximity of creditors of every kind to the court; (ii) location of the Debtor's assets; (iii) proximity of the debtor to the court; (iv) proximity of witnesses necessary to the administration of the estate; and (v) the economic administration of the estate; and (iv) the necessity for ancillary administration of the estate in liquidation should result.

On a Corco analysis, NYCB's request for transfer should fail since it is the largest creditor and plainly located in New York. Moreover, the Debtor's efforts to negotiate a restructuring of the NYCB loan will develop out of New York. Thus, having

access to the New York Bankruptcy Court will allow for a more efficient and less costly reorganization. As several courts have commented:

> Where a transfer would merely shift the inconvenience from one party to the other or where after balancing all factors, the equities lean but slightly in favor of the movant, the plaintiff's choice of forum should not be disturbed.

In re Legend Industries, Inc., 49 B.R. 935, 938 (Bankr. E.D.N.Y.); In Enron II, 284 B.R. at 386-87; In re Great American Resources, Inc., 85 B.R. 444, 445-56 (Bankr. N.D.Oh. 1988).

The Debtor verily believes that a successful reorganization is dependent upon either restructuring its financing with NYCB. The proximity of the Debtor's sole equity holder, and the key NYCB decision makers to the Court, are more important than the fact that the physical assets are located in Florida.

The decision by the late Hon. Conrad B. Duberstein denying a motion to change venue in In re Melgar Enterprises, Inc., supra, is worth emphasizing. In Melgar, the debtor's sole asset consisted of real property in Illinois. Nevertheless, Judge Duberstein elected to retain the case in New York on the strength that the principals of the debtor were located on Long Island.

Finally, while Wadsworth cannot comment on the extent of unsecured claims without access to the Debtor's books and records, however, generally speaking, in real estate cases general unsecured claims are minimal and are often paid in full as part of the reorganization process. In addition, creditors can make appearances by telephone,

and this is hardly a case where creditors are being substantially prejudiced by their distance from the court.

## CONCLUSION

For the reasons set forth herein, NYCB's motion to transfer venue should be denied.

Dated: New York, New York
      March 5, 2010

                                  GOLDBERG WEPRIN FINKEL
                                  GOLDSTEIN LLP
                                  1501 Broadway, 22nd Floor
                                  New York, New York 10036
                                  (212) 221-5700

By: _____
                                  Kevin J. Nash
                                  A Member of the Firm